UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| HUASCAR V.,[1] | Case No. 2:18-cv-08343-JDE |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| ANDREW M. SAUL,[2] Commissioner for Social Security, | |
| Defendant. | |

Plaintiff Huascar V. ("Plaintiff") filed a Complaint on September 27, 2018, seeking review of the Commissioner's denial of his application for Supplemental Security Income ("SSI") benefits. The parties filed a Joint Stipulation ("Jt. Stip.") regarding the issues in dispute on April 29, 2019. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Andrew M. Saul, now Commissioner of the Social Security Administration, is substituted as defendant for Nancy A. Berryhill. See Fed. R. Civ. P. 25(d).

# I.
# BACKGROUND

Plaintiff filed his application for SSI on August 3, 2015, alleging disability commencing on July 1, 2014. Administrative Record ("AR") 46. After his application was denied (AR 64-69), Plaintiff requested an administrative hearing (AR 70-72), which was held on September 26, 2017 (AR 30-44). Plaintiff, represented by an attorney, appeared and testified at the hearing before an Administrative Law Judge ("ALJ"). AR 32-39.

On December 27, 2017, the ALJ found Plaintiff was not disabled. AR 15-26. The ALJ found Plaintiff: (i) had not engaged in substantial gainful activity since August 3, 2015; (ii) suffered from severe impairments of status post bilateral hand surgery, obesity, and gastroesophageal reflux disease; (iii) did not have an impairment or combination of impairments that met or medically equaled a listed impairment; and (iv) had the residual functional capacity ("RFC") to perform sedentary work except:

> [H]e can lift 10 pounds both frequently and occasionally, sit for six hours of an eight-hour workday, stand and/or walk for six hours of an eight-hour workday, perform postural movements occasionally, push and pull with the upper extremities occasionally, and would be limited to occasional fine and gross manipulation of the upper extremities.

AR 20-22. The ALJ found Plaintiff was incapable of performing his past relevant work as a kitchen helper, stock clerk, or ride attendant; but, given Plaintiff's age, education, work experience, and RFC, Plaintiff could perform other jobs existing in significant numbers in the national economy. AR 24-25. Accordingly, the ALJ concluded that Plaintiff was not under a "disability," as defined in the Social Security Act. AR 25.

On July 31, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-6.

# II.
# LEGAL STANDARDS

## A. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review a decision to deny benefits. An ALJ's decision should be upheld if it is free from legal error and supported by substantial evidence. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

## B. Standard for Determining Disability Benefits

When case reaches an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See

Molina, 674 F.3d at 1110. First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Id. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from his impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform past relevant work, either as it was "actually" performed or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, the claimant is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at each of steps one through four to show either disability or that the requirements to proceed to the next

4

step are met; the claimant bears the ultimate burden to show disability. See, e.g., Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.
## DISCUSSION

The parties present two disputed issues (Jt. Stip. at 2):

<u>Issue No. 1</u>: Did the ALJ properly consider Listing 1.02; and

<u>Issue No. 2</u>: Did the ALJ properly consider a consultative examiner's opinion.

### A. **Applicability of Listing 1.02**

As to Issue No. 1, Plaintiff argues the ALJ failed to properly consider the applicability of Listing 1.02, which pertains to a major dysfunction of a joint, because "the ALJ did not independently assess or consider the applicability of this Listing based on his review of the medical record." Jt. Stip. at 4.

#### 1. Applicable Law

At Step Three, ALJs determine if an impairment or combination of impairments "meets or equals" an impairment listed in 20 C.F.R. Part 404, subpart P, appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1525(a), 404.1526, 416.925(a), 416.926. The Listings describe impairments that would prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. An impairment meets a Listing when <u>all</u> of the medical criteria required are satisfied. Tackett, 180 F.3d at 1099 ("To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim."). If an "impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." Bowen v. Yuckert, 482 U.S. 137, 141 (1987).

Claimants bear the burden of establishing a prima facie case of disability under the Listings. See Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002). "To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment . . .." Tackett, 180 F.3d at 1099. "Listed impairments are purposefully set at a high level of severity because the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." Kennedy v. Colvin, 738 F.3d 1172, 1176 (9th Cir. 2014).

An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ need not, however, "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding that ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not satisfy Listing). An ALJ's decision that a plaintiff did not meet a listing must be upheld if it was supported by "substantial evidence." See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

2. Analysis

Plaintiff contends the ALJ erred by relying on the "one-word" testimony of medical expert Thomas Maxwell, M.D. ("Dr. Maxwell") as the "sole-basis" for holding that Plaintiff did not meet Listing 1.02.[3] Jt. Stip. at 4.

---

[3] To satisfy Listing 1.02, Plaintiff had to show the he met the following criteria:
> [M]ajor dysfunction of a joint(s) (due to any cause): characterized by gross anatomical deformity (e.g. subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affect joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected

The ALJ determined Plaintiff "did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." AR 21. The ALJ found that (AR 21):

> [A]fter carefully reviewing the record . . . [Plaintiff's] severe impairments do not meet the criteria for listings 1.02 or 1.08. The medical expert, Thomas Maxwell, M.D., testified at the hearing that [Plaintiff's] impairments do not meet or medically equal a listing. The undersigned gives great weight to this testimony given its consistency with the record and Dr. Maxwell's ability to question [Plaintiff] and observe his hand impairment at the hearing. Accordingly, the undersigned finds that [Plaintiff's] severe impairments do not meet or medically equal a listing.

The Court finds the ALJ did not err at Step Three. "[A]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v.

---

joint(s). With:
    A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; OR
    B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.
20 C.F.R. Part 404, Subpart P, Appendix 1., Listing 1.02. The inability to perform fine or gross movements with the upper extremities is further defined as follows:
    [I]nability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living.
20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.00(B)(2)(c).

Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). Thus, if a plaintiff fails to offer "a specific theory to establish equivalence" at "the hearing before the ALJ," then the ALJ is "not required to analyze the evidence to make an equivalency determination." Mannion v. Berryhill, --- F. App'x ---, 2019 WL 2486702, at *1 (9th Cir. June 14, 2019); see also Pruitt v. Comm'r Soc. Sec., 612 F. App'x 891, 894 (9th Cir. 2015) (same).

Here, Plaintiff presented no evidence, argument or theory to establish the equivalence of Listing 1.02 at the hearing before the ALJ. See AR 30-44. The "ALJ therefore was not required to analyze the evidence to make an equivalency determination." Mannion, 2019 WL 2486702, at *1.

Nonetheless, though not required, the ALJ did recite evidence—Dr. Maxwell's testimony. AR at 21. Plaintiff argues Dr. Maxwell's answer "no" in response to a question asking whether Plaintiff's impairments met a Listing, is insufficient and contradicted by evidence in the record. Jt. Stip. at 3-6. With respect to the brevity of Dr. Maxwell's testimony: (1) Plaintiff cites no rule that a single-word answer in this or any circumstance cannot constitute substantial evidence; and (2) as the ALJ was not required to analyze the evidence at all due to Plaintiff's failure to raise the issue at the hearing, the depth of the analysis is sufficient. With respect to Plaintiff's argument that Dr. Maxwell's testimony is contrary to the medical evidence, the Court finds substantial evidence supports the ALJ's finding, including: (1) Dr. Maxwell's opinion, based upon his review of the record, that Plaintiff was only limited, in part, to "pushing and pulling with the upper extremities limited to occasional, [and] fine and gross manipulation of the upper extremities limited to occasional" (AR 37, 40-41); and (2) the opinion of the consultative examiner, Seung Ha Lim, M.D. ("Dr. Lim"), based in part upon the use of the Jamar Hand Dynamometer, that Plaintiff could generate thirty pounds of force using his right hand and twenty pounds of force using his left hand (AR 23, 351).

Accordingly, the ALJ did not err in finding Plaintiff had not met his burden to show he met the criteria of Listing 1.02.

**B.** **The Consultative Examiner's Opinion**

In Issue No. 2, Plaintiff argues the ALJ failed at Step Two of the sequential analysis to provide "specific and legitimate reasons" for rejecting the opinion of consultative examiner Bahareh Talei, Psy.D. ("Dr. Talei"), a clinical psychologist. See Jt. Stip. at 11-12.

1. Applicable Law

At Step Two, the claimant has the burden to show one or more "severe" medically determinable impairments that can be expected to result in death or last for at least twelve months. See Yuckert, at 146 n.5 (noting claimant bears burden at Step Two); Celaya v. Halter, 332 F.3d 1177, 1180 (9th Cir. 2003) (same). To establish an impairment is severe, the claimant must show it "significantly limits [his or her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); accord § 416.921(a). An impairment or combination of impairments is not severe only if "the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (internal citation and quotation marks omitted); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims.").

"[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb, 433 F.3d at 687 (internal citation omitted). Thus, applying the applicable standard of review to the requirements of Step Two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. See id. at 688.

9

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. § 416.902. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons" supported by substantial evidence in the record. Carmickle v. Comm'r, Sec. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation omitted). "When a treating physician's opinion is contradicted . . . the ALJ must assess its persuasiveness in light of specified factors, including the 'length of the treatment relationship and the frequency of examination;' the 'nature and extent of the treatment relationship;' and the treating opinion's consistency 'with the record as a whole.'" Aranda v. Comm'r Soc. Sec. Admin., 405 F. App'x 139, 141 (9th Cir. 2010) (quoting Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007)).

2. Analysis

Here, the ALJ found at Step Two that there was "insufficient evidence in the record to support a finding that [Plaintiff] has a medically determinable mental impairment causing more than minimal limitations on [his] work-related activities." AR 21. In so finding, the ALJ assigned great weight to the opinion of testifying medical expert David Peterson, Ph.D. ("Dr. Peterson"),

10

who found the evidence insufficient to show a mental impairment, and assigned little weight to the opinion of consulting expert Dr. Talei. AR 20-21.

Dr. Talei examined Plaintiff once in 2015 and found limitations in his behavioral and intellectual functioning, including: an anxious mood, a mildly diminished attention and concentration span, a moderately diminished memory recall, and intellectual functioning in the mild range of mental retardation with a full-scale IQ of 63. AR 356, 358-59. Dr. Talei also found Plaintiff was cooperative and socially responsive, with clear speech, thoughts organized in a linear matter, a normal response time and work pace, and average insight and judgment. AR 358-59. Dr. Talei concluded Plaintiff had a "moderate inability to understand, remember, and carry out detailed instructions" but could understand, remember, and carry out simplistic instructions, as well as independently make simplistic work-related decisions. AR 361. Dr. Talei listed a number of "[p]robable DSM-IV diagnoses," including posttraumatic stress disorder, an unspecified learning disorder, and mild mental retardation. AR 360. Dr. Talei did not list depression as a diagnosis. AR 360. The ALJ accorded "little weight" to the contradicted opinion of Dr. Talei because it was "based on a single examination of [Plaintiff] without corroboration elsewhere in the record," to be contrasted to the opinion of Dr. Peterson, who was "familiar with the complete medical record in this case." AR 20-21.

Plaintiff argues the ALJ's decision to provide little weight to Dr. Talei's opinion was not supported by specific and legitimate reasons supported by substantial evidence. Jt. Stip. at 11-12. Plaintiff contends the medical evidence of record shows Plaintiff "has consistently been diagnosed with a 'depressive disorder' or a 'major depressive disorder, recurrent,'" and has been prescribed "Paxil in an attempt to help manage his depression." Jt. Stip. at 11-12.

The Court finds that the ALJ properly considered the opinion of Dr. Talei here. First, although Plaintiff argues in the Joint Stipulation that he has

11

"been consistently diagnosed" with depression-related ailments, "diagnosis alone is insufficient for finding a 'severe' impairment, as required by the social security regulations." Febach v. Colvin, 580 F. App'x 530, 531 (9th Cir. 2014).

Second, although Plaintiff asserts the ALJ erred in rejecting Dr. Talei's opinion because that the record reflects a history of depression, Dr. Talei did not opine that Plaintiff suffered from depression. See AR 361. Thus, the ALJ's rejection of Dr. Talei's opinion (as opposed to other medical sources), does not reflect rejection of any alleged history of depression.

Third, the ALJ appropriately compared the bases for Dr. Talei's opinion to the bases of Dr. Peterson's opinion.[4] As the ALJ noted, Dr. Talei was not familiar with Plaintiff's complete medical record, whereas Dr. Peterson's opinion was based upon "the complete medical record in the case." AR 20-21, AR 360 (noting "[m]ental health records [were] not provided" to Dr. Talei). The level of knowledge a medical source possesses regarding alleged impairments is relevant to assessing the weight accorded to a medical source's opinion. See 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).

Fourth, aside from depression, which Dr. Talei did not diagnose and thus is not properly raised by a challenge to Dr. Talei's opinion, the ALJ noted the lack of evidentiary support for the existence of a medically determinable mental disorder that caused more than minimal limitations on Plaintiff's work-related activities, citing in particular his review of the treatment records of Plaintiff's treating physician, Luzviminda Montecillo, M.D. ("Dr.

---

[4] The ALJ's decision twice refers to "Dr. Maxwell" in comparing Dr. Peterson's testimony to Dr. Talei's report. AR 20 (final paragraph). Both Dr. Maxwell and Dr. Peterson testified at the hearing; Dr. Maxwell opined as to Plaintiff's "physical ability" (AR 40) and Dr. Peterson opined as to Plaintiff's "mental condition" (AR 41). It appears that the ALJ intended to refer to Dr. Peterson only when comparing the testimony to Dr. Talei's report (AR 20), not Dr. Maxwell.

Montecillo"). AR 20-21. Although Dr. Montecillo diagnosed Plaintiff with major depressive disorder, which again, was not diagnosed by Dr. Talei, Dr. Montecillo further reported such depression was "stable on Paxil" as of February 18, 2016. An impairment that can effectively be controlled by medication is not disabling. Warre, 439 F.3d at 1006. Dr. Montecillo's reports do not otherwise reflect any mental health issues that caused more than minimal limitations on Plaintiff's work-related activities. An ALJ may reject a physician's opinion that is unsupported by the record as a whole. Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).

The ALJ considered the contradicted opinion of Dr. Talei, who met with Plaintiff once and did not review his medical records, and, in electing to afford little weight to that opinion, provided specific and legitimate reasons supported by substantial evidence for doing so. In considering all of the evidence, the ALJ properly found Plaintiff had not met his burden of showing a severe mental health impairment at Step Two. Nonetheless, the ALJ did resolve the Step Two analysis in Plaintiff's favor, finding severe physical impairments, which meant the ALJ continued the analysis through the final steps of the disability determination. See Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007) (the Step Two finding is "merely a threshold determination" that "only raises a prima facie case of a disability"); Burch, 400 F.3d at 682 (concluding that any error ALJ committed at Step Two was harmless where the step was resolved in claimant's favor); Kemp v. Berryhill, 2017 WL 3981195, at *5 (C.D. Cal. Sept. 8, 2017) (any error in declining to find impairments severe harmless because Step Two is the "gatekeeping" step, and the ALJ continued the analysis). Here, the ALJ did not err.

/ / /

/ / /

/ / /

## IV.
## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: July 08, 2019

_____
JOHN D. EARLY
United States Magistrate Judge